FRANK M. DALE ET AL. *v.* JAMES T. HARRAHAN.

FRAUDS. *Property used in business. Undisclosed principal. Business sign. Code* 1892, ₴ 4234.

Where a claim is made to property which has been seized under execution against a firm, one member of which had taken out in his own name a privilege license to carry on the business in which the property was used, advertised sales of such property in the name of the firm, used shipping tags in its name, and made sales and rendered accounts in his own name, the claimant cannot prevail by proving a purchase of the property from the debtor firm and the employment of such member thereof as his agent, when it further appears that the member so carrying on the business has failed to disclose the name of his principal or the real owner by a sign in letters easy to be read placed conspicuously at the house where such business is carried on, since for want of such sign, under Code 1892, § 4234, the property employed in the business is liable for his debts.

FROM the chancery court of Warren county.

HON. W. P. S. VENTRESS, Chancellor.

In March, 1899, J. T. Harrahan, appellee, recovered a decree in the chancery court of Warren county against E. M. McAdams, J. H. McAdams, and W. L. McAdams, composing the firm of E. M. McAdams & Sons. On February 25, 1902, an execution was issued for the balance then due of this decree, and levied on twelve mules in the possession of W. L. McAdams. F. M. Dale, one of the appellants, filed a claimant's affidavit, claiming the property levied on as belonging to appellants F. M. Dale & Co., and gave the required bond. On the trial of the claimant's issue the evidence showed the following facts: The firm of E. M. McAdams & Sons were engaged in business as dealers in mules for a number of years prior to 1896, and occupied a stable at 310 West Grove street, in Vicksburg, and had a sign in front of the stable bearing the firm name of E. M. McAdams & Sons. They became insolvent, and sold their

business to W. J. Howard and F. M. Dale in January, 1896. The stable property was assessed to E. M. McAdams & Sons for the years 1896, 1897, and 1898, and for the years 1899 and 1900 it was assessed to. Shelton, Dale & Co., and in 1901 and 1902 it was assessed to Frank M. Dale & Co. In 1896 or 1897 the firm of Shelton, Dale & Co. commenced doing business at this same stable, with E. M. McAdams & Sons as.agents, and the sign was changed as follows: "E. M. McAdams & Sons, Agents for Shelton, Dale & Co." In 1898 the firm of F. M. Dale & Co., composed of the appellants, bought the business and continued to run it, and this sign was not changed, and was there when the execution was levied. When the firm of F. M. Dale & Co. was formed and took possession of the business, in 1898, they made a contract with W. L. McAdams by which he was employed by them to work for them in the sale of mules. The evidence showed that the mules levied on belonged to F. M. Dale & Co., in fact, and that W. L. McAdams had no interest in them, but was only employed by F. M. Dale & Co. at a fixed salary. W. L. McAdams took out a privilege license to conduct a sales stable in his own name as agent for an undisclosed principal. He caused advertisements to be published in the local papers, used shipping tags in the name of E. M. McAdams & Sons, and made sales of stock and rendered accounts in his own name. From a final decree holding that the mules levied on were liable to be sold under the execution, the claimants appeal.

*Dabney & McCabe,* for appellants.

It is not pretended that there was any fraud or collusion between the claimants and E. M. McAdams & Sons or W. L. McAdams. Indeed, there is no serious controversy as to the fact that the mules in question really belonged to the claimants and that W. L. McAdams was merely their agent. Section 4234, Code 1892, was not designed to meet such a case. It cannot be said with any show of reason that a firm (E. M. McAdams & Sons) which was not in existence at the time the levy was made,

and had not been for many years prior thereto, the members of which resided in a distant state, who had no interest in the stable itself, none in the mules used and acquired in the business, none whatever in the business itself, who had nothing to do with buying the stock or paying for the same, who had nothing to do with the payment of the taxes on the property or on the business, no interest whatever in the bank account, and no interest, directly or indirectly, in the profits of the concern, could be said to be transacting the business within the meaning of the statute. *Harris* v. *Robson,* 68 Miss., 506.

Nor can it be said that a quondam member of such a firm, who had no interest in the property, no interest in the mules used and acquired in the business, no interest in the business itself, nothing to do with the buying of the stock, nothing to do with paying for the same, nothing to do with the shipping of the same, nothing to do with the payment of the taxes on the property, or on the mules, or on the business, whose money did not go to the payment for the feed bills for the stock, who had no interest whatever in the bank account, who had nothing to do with insuring the mules—in short, who had no interest in the business whatever, nor in the proceeds and profits arising therefrom, but was a mere hired employe, working for a salary—can be said to be transacting the business within the sense and meaning of the statute. *Bufkin* v. *Lyon,* 68 Miss., 255.

But it is objected that the sign did not truly disclose the name of W. L. McAdams' principal in this matter; that the sign says that Shelton, Dale & Co. were the principals, whereas Shelton had no interest in the business, but the business belonged to F. M. Dale & Co. In other words, it is seriously contended that because F. M. Dale & Co. had not changed the sign the second time so as to show the exact ownership of the stable and of the mules, the complainant is entitled to subject their property to the payment of his debt. The absurdity of such a proposition is manifest. It has already been shown that when E. M. McAdams & Sons sold out the stable and quit business in

Vicksburg and left here themselves, Shelton, Dale & Co. purchased the stable and the business from them, and that in order to prevent future trouble of any kind they had the sign so changed as to show that the business which had previously been conducted in the name of E. M. McAdams & Sons would be thereafter conducted under that name, as agents for the benefit of the purchasers. It will also be remembered that in buying out the stable they bought the good will of E. M. McAdams & Sons, and in order to obtain the good will it was thought proper to allow their names to remain upon the stable in future as it had been in the past. When this sign was changed to conform to the then ownership, it was exact; but some years afterwards Mr. Shelton withdrew from the firm, and it seems it was not thought necessary, or not known to be necessary, to have his name stricken from the sign, hence it was allowed to remain "Shelton, Dale & Co." up to the time of the levy in this case. And we insist that while the sign was not at the time of the levy technically correct, it was sufficient. It showed, first of all, that the business was not being conducted by E. M. McAdams & Sons or by W. L. McAdams individually, or for their own benefit, but that they were conducting it as agents for some one else. In other words, it showed that they did not own the property, but that some one else did. In the second place, it did show who were the principals in that business—namely, Dale & Co., a firm composed of F. M. Dale and J. W. Howard. That Dale & Co. were the owners of the stable and of the business no one can gainsay. It is true that the sign added, in effect, that Mr. Shelton was still interested in the business, which, in point of fact, was not true. This error, insignificant in itself, is not sufficient, in view of all the other evidence in this case, to render the claimants' property liable for their hireling's debt. We repeat that the names of the principals were disclosed by the sign, and that was all that was required by the statute.

*Smith, Hirsh & Landau,* for appellee.

W. L. McAdams, a member of the firm of E. M. McAdams & Sons, was carrying on the business of the stable without disclosing the name of his principal by a sign of the character specified in Code 1892, § 4234; and the property levied on, being employed in that business, was clearly subject to his debts. *Quin* v. *Myles,* 59 Miss., 375; *Loeb & Bloom* v. *Morton & Co.,* 63 *Ib.,* 288; *Hamblett* v. *Steen,* 65 *Ib.,* 474; *Payne* v. *Hall Safe & Lock Co.,* 64 *Ib.,* 175.

TRULY, J., delivered the opinion of the court.

The chancellor decreed that the mules in question were liable to be sold under the execution issued on appellee's judgment against E. M. McAdams & Sons, of which firm W. L. McAdams was a member. This record discloses no reason why we should disturb that finding. Under no view of the case can the property escape liability for the debts of W. L. McAdams under the provisions of § 4234, Code 1892. That statute fixes the ownership primarily in the person by whom the business in which the property is used or acquired is conducted. If, in point of fact, that be not true, in order to escape liability for his debts the name of the real owner must be disclosed in the manner pointed out by that section. In the instant case the chancellor held, upon a finding of fact, that W. L. McAdams was the person transacting the business, and the record supports this conclusion. Privilege license to conduct a sales stable was taken out by W. L. McAdams in his own name as agent for an undisclosed principal. He inserted advertisements in the local papers, used shipping tags in the name of E. M. McAdams & Sons, made sales of stock and rendered accounts in his own name. This fixed the ownership of all the property used or acquired in such business in him, and, as to his creditors, rendered the same liable to his debts. The express terms of the statute so declare. In order to escape this result, it was necessary to follow the method pointed out by sec. 4234, *supra*—*i. e.,* to disclose the

name of his principal or the real owner "by a sign in letters easy to be read placed conspicuously at the house where such business is transacted." This was not done in the case at bar. The sign in use here failed to disclose either the name of the person who was transacting the business or that of his principal. In endeavoring to obtain the benefit of W. L. McAdams' "good will" and busines reputation, appellants unwittingly rendered their property liable to his debts.

*Affirmed.*